UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

MAEOLA AND DONNELL SMITH                                   PLAINTIFFS

v.                       CASE NO. 5:16-cv-00283-JMM

GENERAL MOTORS LLC                                         DEFENDANT

**DEFENDANT GENERAL MOTORS LLC'S
MOTION FOR SUMMARY JUDGMENT**

# EXHIBIT 3

I, Stacey Whelan, declare as follows:

1. I am over the age of 18, and I am competent to sign this Affidavit. I have personal knowledge of the facts set forth in this Affidavit, submitted in connection with *Maeola Smith, et al. v. General Motors LLC, et al.*, 5:16-cv-00283-JM, pending in the United States District Court for the Eastern District of Arkansas, Pine Bluff Division. References herein are made to the March 18 2019 Expert Report of Stacey Whelan.

2. I worked for General Motors Corporation ("GMC") from 1996 until July of 2009. Since July 10, 2009, I have been employed by General Motors LLC ("GM").

3. I am currently a Technical Expert in the Engineering Analysis department at the GM Technical Center in Warren, Michigan. My curriculum vitae is attached to my report. I fully incorporate by reference the facts and opinions set forth in my March 18, 2019 report.

4. In my current position, as well as in my previous assignments, I am responsible for the evaluation of automobile crashes. In my capacity, I have analyzed vehicle and occupant responses in both full-scale crash and sled tests, conducted computer simulations of crash events, and designed and developed occupant protection systems, vehicle structure crashworthiness, and seats.

5. My responsibilities included the certification of GM vehicles to the applicable Federal Motor Vehicle Safety Standards ("FMVSS"). Through my experience at GM, I have developed expertise in the area of overall vehicle safety and structure crashworthiness, as well as interior and restrains system design and performance, including seat systems.

6. I have reviewed the allegations as set forth in the complaint, as amended, listed for this matter, concerning a crash that occurred in Monroe County, Arkansas on October 01, 2014, involving a 1997 Saturn SL sedan. Specifically, I was asked to assess the design, development, and condition of the driver seat in the 1997 Saturn SL2 four door sedan.

7. The subject vehicle in this case is a 1997 model year Saturn SL2 four door sedan, VIN 1G8ZK527411200 (the "Saturn"), and is known internally at General Motors as part of the Saturn S-series based on the Saturn Z-car platform.

8. There are various Federal Motor Vehicle Safety Standards ("FMVSS") applicable to the seat, restraint, and belt assembly anchorage of the Saturn. FMVSS 207 requires that there must be a driver's seat and specifies the strength requirements for seat structures, attachment assemblies, and their installations. It also requires that the seats remain in an adjusted position during the application of crash forces. A hinged or folding seat back must be equipped with a self-locking device.

9. FMVSS 208 specifies the types of restraints that may be used in motor vehicles, the testing the systems must undergo, the injury criteria that must be met, the warning systems that must be included in the vehicle and many other aspects of restraint system design, such as comfort and convenience.

10. FMVSS 210 specifies belt assembly anchorage strength and location requirements.

11. The 1997 Saturn SL front seats met and exceeded FMVSS 207, 208, and 210 when it was manufactured and sold.

12. The first critical step of the engineering analysis is to conduct a detailed physical inspection of the subject vehicle, including documenting the evidence by photographs and detailed measurements. These photographs and measurements are necessary to evaluate the performance of the seat and the welds in question. A download of the SDM is beneficial to assess the severity and timing of the event or events.

13. In order to assess the crash severity and structural integrity of both the floor pan and front driver seat, I would have inspected the Saturn and, at a minimum, photographed and measured the following: (a) exterior of the Saturn, including measurements of the intrusion; (b) overall view of the driver seat and its relationship with the other components in the Saturn; (c) front driver seat attachments to the floor; (d) driver seat tracks, including measurements of the seat fore-aft along the seat track and height of the seat above the floor; (d) measurements of the seat cushion angle and seat back angle; (e) seat structure visible underneath the seat; (f) floor pan in the area of the front seat attachments and under the seat; and (g) welds on the right side of the tunnel to the floor pan.

14. A vehicle inspection would have provided confirmation of the precise location of the seat relative to the vehicle structure, the relative location of the seat cushion to the seat back, and if the driver seat's structural integrity was maintained. I was not afforded the opportunity to examine the Saturn. Although State Farm Bureau provided some photographs of the vehicle, those do not constitute a thorough inspection.

15. While precision may no longer be obtained, certain inferences can be made. The exterior photos show that both front doors were fully capable of being opened. *See* Figure 8 of Report. There does not appear to be longitudinal deformation in the left front fender or left front rocker panel. *See* Figure 9 of Report. The photographs indicate either no or minimal intrusion into the driver occupant compartment. *See* Figures 10, 11, 12, and 13 from report.

16. Based on the photographs, the driver's seat is not shown to have experienced significant displacement due to the loss of the floor pan structure integrity or significant plastic deformation due to the loss of its attachment to the vehicle structure. The relative location between the seat back and the seat cushion is not remarkable; the lack of twisting and longitudinal or vertical deformation of the seat structure indicates that the seat does not appear to have experienced a significant torque or longitudinal loading.

17. My fundamental opinions are based on the information that I reviewed, my education, automotive engineering experience, all of the analysis that is contained in my report, and my review of the materials listed above. My opinions are as follows:

18. I have reviewed the Plaintiffs' allegations that due to "suspect cold welds on the right side in the tunnel area of the floor pan" in the Saturn, Maeola Smith "sustained life threatening injuries in an automobile crash on October 1, 2014." The recall involving the suspect cold welds on the right side of the tunnel (Recall 97V15500) was not applicable to the subject vehicle Saturn;

19. The suspect cold welds on the right side of the tunnel that allegedly led to the Plaintiffs' injuries are on the opposite side of the Saturn from the driver's side;

20. There is no evidence to support the presence of suspect cold welds in the Saturn;

21. The design of the Saturn's front driver seat and the floor pan was reasonable and appropriate to withstand the loads exhibited from a wide range of crash configurations and occupants;

22. There is no evidence of obvious deformation in the Saturn's driver seat or floor pan in the subject crash.

23. The integrity of the Saturn's driver seat to floor attachment was validated during component level tests, subsystem sled tests, and full-scale barrier crash tests, including FMVSS evaluations;

24. The overall design of the Saturn front seats by GMC was reasonable and appropriate and there were no defects in the design of the seat when it left GMC's possession.

I declare under penalty of perjury under the laws of the State of Arkansas, that the foregoing is true and correct.

Executed this 8th day of April in Warren, Michigan.

*/s/ Stacey Whelan*
Stacey Whelan, Declarant

*/s/ Katherine A. Mason*

KATHERINE A MASON
Notary Public, State of Michigan
County of Oakland
My Commission Expires Nov. 04, 2023
Acting in the County of Macomb