UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**MAEOLA AND DONNELL SMITH**                                                        **PLAINTIFFS**

v.                              **CASE NO. 5:16-cv-00283-JMM**

**GENERAL MOTORS LLC**                                                                **DEFENDANT**

<u>**DEFENDANT GENERAL MOTORS LLC'S REPLY BRIEF**</u>
<u>**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

# EXHIBIT A

## AFFIDAVIT OF STACEY WHELAN

1. My name is Stacey Whelan. I am employed by General Motors LLC as a Technical Expert in the Engineering Analysis Department at the GM Technical Center in Warren, Michigan. One of my primary functions is to investigate accidents involving General Motors LLC vehicles to determine their performance during an accident.

2. I have reviewed the plaintiffs' allegations concerning cold welds in the tunnel area floor pan of the 1997 Saturn made the basis of this action (VIN 1G8ZK5274VZ411200). Plaintiffs refer to a 1997 recall notice, NHTSA No. 97V-155 (GM No. 97-C-06 or 97046). This recall only applied to five Saturn vehicles, all of which were manufactured on March 24, 1997.

3. As stated in my initial affidavit and expert disclosure (which is attached as Exhibit A), this recall does *not* apply to Maeola Smith's Saturn, because GM LLC manufactured Maeola Smith's Saturn on June 23, 1997.

I declare under penalty of perjury under the laws of the State of Arkansas, that the foregoing is true and correct.

Executed this 23rd day of May in Warren, Michigan.

_____
Stacey Whelan, Declarant

Michelle Marie Lachajewski
Notary Public of Michigan
Macomb County
Expires 03/03/2026
Acting in the County of Macomb

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**MAEOLA AND DONNELL SMITH**                                 **PLAINTIFFS**

v.                 **CASE NO. 5:16-cv-00283-JMM**

**GENERAL MOTORS LLC**                                       **DEFENDANT**

**AFFIDAVIT OF STACEY WHELAN**

**EXHIBIT A**

I, Stacey Whelan, declare as follows:

1. I am over the age of 18, and I am competent to sign this Affidavit. I have personal knowledge of the facts set forth in this Affidavit, submitted in connection with *Maeola Smith, et al. v. General Motors LLC, et al.*, 5:16-cv-00283-JM, pending in the United States District Court for the Eastern District of Arkansas, Pine Bluff Division. References herein are made to the March 18 2019 Expert Report of Stacey Whelan.

2. I worked for General Motors Corporation ("GMC") from 1996 until July of 2009. Since July 10, 2009, I have been employed by General Motors LLC ("GM").

3. I am currently a Technical Expert in the Engineering Analysis department at the GM Technical Center in Warren, Michigan. My curriculum vitae is attached to my report. I fully incorporate by reference the facts and opinions set forth in my March 18, 2019 report.

4. In my current position, as well as in my previous assignments, I am responsible for the evaluation of automobile crashes. In my capacity, I have analyzed vehicle and occupant responses in both full-scale crash and sled tests, conducted computer simulations of crash events, and designed and developed occupant protection systems, vehicle structure crashworthiness, and seats.

5. My responsibilities included the certification of GM vehicles to the applicable Federal Motor Vehicle Safety Standards ("FMVSS"). Through my experience at GM, I have developed expertise in the area of overall vehicle safety and structure crashworthiness, as well as interior and restrains system design and performance, including seat systems.

6. I have reviewed the allegations as set forth in the complaint, as amended, listed for this matter, concerning a crash that occurred in Monroe County, Arkansas on October 01, 2014, involving a 1997 Saturn SL sedan. Specifically, I was asked to assess the design, development, and condition of the driver seat in the 1997 Saturn SL2 four door sedan.

7. The subject vehicle in this case is a 1997 model year Saturn SL2 four door sedan, VIN 1G8ZK527411200 (the "Saturn"), and is known internally at General Motors as part of the Saturn S-series based on the Saturn Z-car platform.

8. There are various Federal Motor Vehicle Safety Standards ("FMVSS") applicable to the seat, restraint, and belt assembly anchorage of the Saturn. FMVSS 207 requires that there must be a driver's seat and specifies the strength requirements for seat structures, attachment assemblies, and their installations. It also requires that the seats remain in an adjusted position during the application of crash forces. A hinged or folding seat back must be equipped with a self-locking device.

9. FMVSS 208 specifies the types of restraints that may be used in motor vehicles, the testing the systems must undergo, the injury criteria that must be met, the warning systems that must be included in the vehicle and many other aspects of restraint system design, such as comfort and convenience.

10. FMVSS 210 specifies belt assembly anchorage strength and location requirements.

11. The 1997 Saturn SL front seats met and exceeded FMVSS 207, 208, and 210 when it was manufactured and sold.

12. The first critical step of the engineering analysis is to conduct a detailed physical inspection of the subject vehicle, including documenting the evidence by photographs and detailed measurements. These photographs and measurements are necessary to evaluate the performance of the seat and the welds in question. A download of the SDM is beneficial to assess the severity and timing of the event or events.

13. In order to assess the crash severity and structural integrity of both the floor pan and front driver seat, I would have inspected the Saturn and, at a minimum, photographed and measured the following: (a) exterior of the Saturn, including measurements of the intrusion; (b) overall view of the driver seat and its relationship with the other components in the Saturn; (c) front driver seat attachments to the floor; (d) driver seat tracks, including measurements of the seat fore-aft along the seat track and height of the seat above the floor; (d) measurements of the seat cushion angle and seat back angle; (e) seat structure visible underneath the seat; (f) floor pan in the area of the front seat attachments and under the seat; and (g) welds on the right side of the tunnel to the floor pan.

14. A vehicle inspection would have provided confirmation of the precise location of the seat relative to the vehicle structure, the relative location of the seat cushion to the seat back, and if the driver seat's structural integrity was maintained. I was not afforded the opportunity to examine the Saturn. Although State Farm Bureau provided some photographs of the vehicle, those do not constitute a thorough inspection.

15. While precision may no longer be obtained, certain inferences can be made. The exterior photos show that both front doors were fully capable of being opened. *See* Figure 8 of Report. There does not appear to be longitudinal deformation in the left front fender or left front rocker panel. *See* Figure 9 of Report. The photographs indicate either no or minimal intrusion into the driver occupant compartment. *See* Figures 10, 11, 12, and 13 from report.

16. Based on the photographs, the driver's seat is not shown to have experienced significant displacement due to the loss of the floor pan structure integrity or significant plastic deformation due to the loss of its attachment to the vehicle structure. The relative location between the seat back and the seat cushion is not remarkable; the lack of twisting and longitudinal or vertical deformation of the seat structure indicates that the seat does not appear to have experienced a significant torque or longitudinal loading.

17. My fundamental opinions are based on the information that I reviewed, my education, automotive engineering experience, all of the analysis that is contained in my report, and my review of the materials listed above. My opinions are as follows:

18. I have reviewed the Plaintiffs' allegations that due to "suspect cold welds on the right side in the tunnel area of the floor pan" in the Saturn, Maeola Smith "sustained life threatening injuries in an automobile crash on October 1, 2014." The recall involving the suspect cold welds on the right side of the tunnel (Recall 97V15500) was not applicable to the subject vehicle Saturn;

19. The suspect cold welds on the right side of the tunnel that allegedly led to the Plaintiffs' injuries are on the opposite side of the Saturn from the driver's side;

20. There is no evidence to support the presence of suspect cold welds in the Saturn;

21. The design of the Saturn's front driver seat and the floor pan was reasonable and appropriate to withstand the loads exhibited from a wide range of crash configurations and occupants;

22. There is no evidence of obvious deformation in the Saturn's driver seat or floor pan in the subject crash.

23. The integrity of the Saturn's driver seat to floor attachment was validated during component level tests, subsystem sled tests, and full-scale barrier crash tests, including FMVSS evaluations;

24. The overall design of the Saturn front seats by GMC was reasonable and appropriate and there were no defects in the design of the seat when it left GMC's possession.

I declare under penalty of perjury under the laws of the State of Arkansas, that the foregoing is true and correct.

Executed this 8th day of April in Warren, Michigan.

*[signature]*
Stacey Whelan, Declarant

*[signature]*

KATHERINE A MASON
Notary Public, State of Michigan
County of Oakland
My Commission Expires Nov. 04, 2023
Acting in the County of Macomb



March 18, 2019

## Expert Report of Stacey Whelan
## Maeola Smith vs. General Motors LLC

I have prepared this report at the request of counsel for General Motors LLC ("GM") in the case *Maeola Smith vs. General Motors LLC*, filed in the U.S. District Court, Eastern District of Arkansas, Case 5:16-cv-00283-JM. This report contains my opinions about the design, development, and condition of the driver seat in the 1997 Saturn SL2 four door sedan.

### PERSONAL BACKGROUND

I worked for General Motors Corporation ("GMC") from 1996 till July 2009. Since July 10, 2009, I have been employed by General Motors LLC ("GM"). I am currently a Technical Expert in the Engineering Analysis department at the GM Technical Center in Warren, Michigan. My current position, as well as my previous assignments, include the evaluation of automobile crashes. I received a Bachelor of Science degree in Materials Science and Engineering from Carnegie Mellon University in 1996. I then received a Master of Science degree in Management of Technology in 2001 from Rensselaer Polytechnic Institute. While working at GM, I have analyzed vehicle and occupant responses in both full-scale crash and sled tests, conducted computer simulations of crash events, and designed and developed occupant protection systems, vehicle structure crashworthiness, and seats. This also included the certification of GM vehicles to the applicable Federal Motor Vehicle Safety Standards (FMVSS). My experiences at GM have allowed me to develop expertise in the area of overall vehicle safety and structure crashworthiness, as well as interior and restraints system design and performance, including seat systems. I have attached my curriculum vitae for reference. I am a salaried GM employee and do not receive additional compensation for my work on this case. I have not provided expert testimony in a deposition or trial in the past four years.

### MATERIAL REVIEWED

I reviewed the following documents:

- Plaintiffs' Complaint Case 5:16-cv-00283-JM Document 1 Filed 09/09/2016
- Plaintiffs' First Amended Complaint Case 5:16-cv-00283-JM Document 9 Filed 11/15/2016
- Plaintiffs' Second Amended Complaint Case 5:16-cv-00283-JM Document 23 Filed 1/31/2017



General Motors North America
Engineering Analysis

- Plaintiffs' Third Amended Complaint Case 5:16-cv-00283-JM Document 36 Filed 05/09/2017
- Plaintiffs' First Amended Complaint Case 5:16-cv-00283-JM Filed 3/20/2018
- Arkansas Uniform Motor Vehicle Collision Report 48104104
- Driver Seat and Seat Belt references in the 1997 Saturn SL Service Manual
- Driver Seat and Floor Pan Illustrations from the1991-2002 Saturn S-Series Parts & Illustration Catalog
- 1997 Saturn SL FMVSS207 compliance package
- 1997 Saturn SL FMVSS208 compliance package
- 1997 Saturn SL FMVSS210 compliance package
- Documents received in response to GM's subpoena to State Farm Bureau
- Seat Drawings – 21102003LO, 21046416, 21049650
- Subject vehicle Information (GM Vehicle Inquiry System info, new vehicle invoice, title and warranty history, component build list, etc.) for VIN 1G8ZK5274VZ411200
- Carfax Vehicle History Report for 1G8ZK5274VZ411200
- Field Performance Evaluation Report issued for 1997 Saturn Floor Pan Welds, Document 1789-NC
- RC-97V155-NN.PDF - https://static.nhtsa.gov/odi/rcl/1997/RC-97V155-NN.PDF
- Evaluation reports and/or engineering analysis reports for the driver's seat assembly for vehicles in the seat scope

## ALLEGATION

The Plaintiffs' complaint alleges that due to "suspect cold welds on the right side in the tunnel area of the floor pan" in her 1997 Saturn SL four door sedan (VIN 1G8ZK5274VZ411200), Maeola Smith "sustained life threatening injuries in an automobile crash on October 1, 2014."

## CRASH DESCRIPTION

The Arkansas Uniform Motor Vehicle Collision Report 48101404 describes on October 1, 2014, "Mayola Smith"[1] was driving a 1997 Saturn SL, VIN 1G8ZK5274V2411200, on Highway 86 in Monroe County, Arkansas. Jeremy Dawson was driving a John Deere tractor and was attempting to turn on to the highway from a driveway. He pulled up to look around the trees along the side of the highway and was hit by the subject vehicle. The report indicated that Mrs. Smith left 58' of skid marks before leaving the roadway. Mrs. Smith then traveled approximately 38'2" before impacting the left rear tire of the tractor. The investigator's drawing is shown in Figure 1. Photographs of the subject tractor and the subject vehicle are shown in Figures 2-4.

1 Mayola is how her name is recorded in the accident report. Maeola is what is shown in the Plaintiffs' documents.



General Motors North America
Engineering Analysis



Figure 1: Smith Police Collision Report Diagram

Mrs. Smith was reported as having unknown safety equipment, airbag deployment, and an incapacitating injury. The collision damage for the subject vehicle was recorded as "Disabled." Vehicle defects were reported as "No Defects."



Figure 2: State Farm Bureau: John Deere Tractor



Figure 3: State Farm Bureau: Exterior of the Subject Vehicle

General Motors • Global Technical Center • Mail Code 480-111-E20 • 29360 William Durant Boulevard • Warren, MI 48092
3 | P a g e


General Motors North America
Engineering Analysis



Figure 4: State Farm Bureau: Subject Vehicle and John Deere Tractor

## Vehicle and Front Seat Description

The subject vehicle in this case is a 1997 model year Saturn SL2 four door sedan, VIN 1G8ZK5274VZ411200, and is known internally at General Motors as part of the Saturn S-series based on the Saturn Z-car platform. The vehicle was built on or about June 23, 1997 at the assembly plant in Spring Hill, TN.

The Saturn S-series was first introduced in the 1991 model year, and continued in production through the 2002 model year. The Saturn S-series was sold as a four door Sedan (SL series), Coupe (SC series), and Wagon (SW series). In the 1991 model year, Saturn introduced the coupe and sedan versions of the Z body. In the 1993 model year, the station wagon version was introduced. In the 2003 model year, the S series Saturn Z-body was replaced by an all new platform. The last year of production for the Saturn Z-body was 2002.

The driver seat in the 1997 Saturn SL2 was a bucket seat and was comprised of the following sub-assemblies:

- *Seat back*, which consists of the back cushion and frame;
- *Seat bottom*, which consists of the bottom cushion and frame;
- *Seat track,* which provides fore and aft movement and anchorage of the seat to the vehicle;
- *Seat adjuster*, which controls the movement of the seat and can be either manual or power;
- *Seat recliner*, which allows the seat back to rotate relative to the seat bottom.

The driver seat is attached to the front floor pan using two bolts into the front face of the 2-bar and two bolts into the top face of the 3-bar. See Figure 5.


General Motors North America
Engineering Analysis



Figure 5: 1997 Saturn Driver Seat to Floor attachments from the 1997 Saturn Service Manual

The front seat belt buckles are attached to the outboard side of the seat. See Figure 6.



Figure 6: 1997 Saturn Driver Belt Buckle to Seat attachments from the 1997 Saturn Service Manual

### Recall 97V155000

Recall 97V15500 relating to cold welds applies to 5 vehicles built on March 24, 1997. The subject vehicle was built on or about June 23, 1997, and was therefore not affected by this recall. In addition, the suspect cold welds were on the right side of the vehicle, not the left side. See Figure 7 for location of the welds.

**GM** General Motors North America
Engineering Analysis



Figure 7: 1997 Saturn SL Front Floor Assembly

## TESTING AND CERTIFICATION

The 1997 Saturn SL front seats met and exceeded Federal Motor Vehicle Safety Standards (FMVSS) 207, 208, and 210 when it was manufactured and sold, which address the pertinent seat requirements in a motor vehicle.

- FMVSS 207 requires there must be a driver seat. It specifies the strength requirements for seat structures, attachment assemblies, and their installations. It also requires that the seats remain in an adjusted position during the application of the forces. A hinged or folding seat back must be equipped with a self-locking device.

- FMVSS 208 specifies the types of restraints that may be used in motor vehicles, the testing the systems must undergo, the injury criteria that must be met, the warning systems that must be included in the vehicle and many other aspects of restraint system design, such as comfort and convenience.

- FMVSS 210 specifies belt assembly anchorage strength and location requirements.



General Motors North America
Engineering Analysis

### Inspection and Photographs

The first critical step of the engineering analysis is to conduct a detailed physical inspection of the subject vehicle, including documenting the evidence by photographs and detailed measurements. These photographs and measurements are necessary to evaluate the performance of the seat and the welds in question. A download of the SDM is beneficial to assess the severity and timing of the event or events.

In order to assess the crash severity and structural integrity of both the floor pan and front driver seat, I would have inspected the vehicle and at a minimum photographed and measured the following:

- Exterior of the vehicle, including measurements of the intrusion
- Overall view of the driver seat and its relationship with the other components in the vehicle
- Front driver seat attachments to the floor
- Driver seat tracks, including measurements of the seat fore-aft along the seat track and height of the seat above the floor
- Measurements of the seat cushion angle and seat back angle
- Seat structure visible underneath the seat
- Floor pan in the area of the front seat attachments and under the seat
- Welds on the right side of the tunnel to the floor pan

In addition, a vehicle inspection would have provided confirmation of the precise location of the seat relative to the vehicle structure, the relative location of the seat cushion to the seat back, and if the driver seat's structural integrity was maintained. I was not afforded the opportunity to examine this vehicle. State Farm Bureau provided some photographs of the vehicle, but not a thorough inspection.



Figure 8: State Farm Bureau: Exterior of the Subject Vehicle



Figure 9: State Farm Bureau: Exterior of the Subject Vehicle



**General Motors North America Engineering Analysis**

While precision may no longer be obtained, certain inferences can be made. The exterior photos show that both front doors were fully openable (Figure 8). There does not appear to be longitudinal deformation in the left front fender or left front rocker panel (Figure 9). These photographs indicate either no or minimal intrusion into the driver occupant compartment.



Figure 10: State Farm Bureau: Interior of the Subject Vehicle



Figure 11: State Farm Bureau: Interior of Subject Vehicle



Figure 12: State Farm Bureau: Interior of the Subject Vehicle



Figure 13: State Farm Bureau: Interior of Subject Vehicle

The driver's seat, as shown in Figures 10-13 above, does not reflect a seat that has experienced significant displacement due to the loss of the floor pan structure integrity or significant plastic deformation due to the loss of its attachment to the vehicle structure. The relative location between the seat back and the seat cushion is not remarkable; the lack of twisting and longitudinal or vertical deformation of the seat structure indicates that the seat does not appear to have experienced a significant torque or longitudinal loading.

Based on the information provided thus far, there is no evidence supporting the Plaintiffs' cold weld allegation.


General Motors North America
Engineering Analysis

## SUMMARY OF OPINIONS

My opinions are based on the information that I reviewed, my education, automotive engineering experience, all of the analysis that is contained within this report, and my review of the materials listed.

- The recall involving the suspect cold welds on the right side of the tunnel was not applicable to the subject vehicle.

- The suspect cold welds on the right side of the tunnel that allegedly led to the Plaintiffs' injuries are on the opposite side of the vehicle from the driver's side.

- The design of the subject vehicle's front driver seat and the floor pan was reasonable and appropriate to withstand the loads exhibited from a wide range of crash configurations and occupants.

- There is no evidence to support that cold welds were present in the subject vehicle.

- There is no evidence of obvious deformation in the driver seat or floor pan in this crash.

- The integrity of the driver seat to floor attachment was validated during component level tests, subsystem sled tests, and full scale barrier crash tests, including FMVSS evaluations.

- The overall design of the 1997 Saturn SL front seats by GMC was reasonable and appropriate and there were no defects in the design of the seat when it left GMC's possession.

## TRIAL EXHIBITS

I may use the following exhibits during my testimony:

- Photographs of the vehicle involved in this crash;
- Photographs of the accident scene;
- The subject vehicle (if it becomes available);
- An exemplar vehicle or relevant vehicle components and photographs of an exemplar vehicle or relevant vehicle components;
- Test videos and data;
- Vehicle design and assembly information produced in discovery;
- Schematics of the front seat assemblies and the front floor pan in a 1997 Saturn SL Sedan;



**General Motors North America
Engineering Analysis**

- Materials listed within this report;
- Documents and things produced by GM during discovery; and
- Any exhibits introduced through the testimony of other witnesses.

If additional information becomes available, including specific information regarding the Plaintiffs' allegation of defect, a supplement to this report may be generated.

*Stacey Whelan*

Stacey Whelan
Engineering Analysis
Global Vehicle Safety
General Motors

KATHERINE A MASON
Notary Public, State of Michigan
County of Oakland
My Commission Expires Nov. 04, 2023
Acting in the County of *Macomb*

**GM** | General Motors North America
Engineering Analysis

# Stacey Whelan

## EDUCATION

M.S.E.S. Management of Technology, Rensselaer Polytechnic Institute        2001
B.S. Material Science Engineering, Carnegie Mellon University        1996

## PROFESSIONAL EXPERIENCE

### General Motors Company

**Technical Expert – Engineering Analysis, Global Vehicle Safety        Oct 2014 – present**
- Analyze product field performance on GM products, and communicate field relevant data to assist in future product designs.
- Provide technical analysis and evaluation to GM's trial counsel and Legal Staff relative to seat performance and vehicle crashworthiness in product liability litigation claims.

### Seat Department
*Seat Complete Design Release Engineer*        **Oct, 2012 – Oct, 2014**
*Cadillac XT5*
- Lead the development of the seat system and seat to vehicle interface, track problem resolutions, direct engineering changes, order parts, review and optimize the seat component level development and validation plan.

### Vehicle Safety and Crashworthiness Integration
*Safety Performance Integration Team Leader*        **Feb, 2009 – Sep, 2012**
*Chevrolet Traverse, Buick Enclave, GMC Acadia*
- Created development and validation (ADV) plans utilizing physical hardware and computer simulations for new front occupant restraints, side occupant restraints, the Front Center Airbag, and modified structure packages.
- Conducted sled tests and full vehicle barrier tests to provide design direction on seats, seat belts, airbags, steering column, and knee bolster.
- Ensure compliance to all applicable federal regulations and GM Internal Requirements. Prepare the PAC reports and present to the PAC team.
- Provided feedback to other programs during critical testing through informal and formal peer reviews.

*Senior Structure Performance Engineer*        **Sep, 2007 – January, 2009**
*Buick Encore, Chevrolet Trax*
- Work-share with GMDAT from Korea to develop structural crashworthiness of a Global Small Car SUV to be sold in North America, Europe, China, Japan, Australia and Brazil.
- Performed structural analysis of the SUV using Finite Element Analysis - LSDyna simulations

*Lead Occupant Engineer –Holden, Melbourne, Australia*        **Nov, 2006 – August, 2007**
*Pontiac G8*
- Direct the re-design of a Holden vehicle developed for Australian regulations to meet FMVSS208 and General Motors North American (GMNA) requirements.


General Motors North America
Engineering Analysis

- Led off-site engineering team to evaluate crashworthiness performance of frontal occupants using analytical simulation techniques and component level testing. Provided design direction for various occupant protection systems including knee bolster systems, airbags, and seat belts.

| | |
|---|---|
| *Lead Occupant Performance Integration Engineer* | **Jun, 2006 – Nov, 2006** |
| *Passenger Performance Engineer* | **Jan, 2003 – Jun, 2006** |
| *Driver Performance Engineer* | **Jan, 2001 – Jan, 2003** |
| *Rear Seat Occupants Performance Engineer* | **May, 1998 – Dec, 2000** |

- Performed Madymo analyses, sled tests, and full vehicle crash tests for restraint development including 5th, 50th, and 95th percentile occupants, in both belted and unbelted conditions.
- Provided occupant performance and design information to the PAC reports.
- Provided design direction for seat belts, seats, airbags, steering column, and knee bolsters.
- Conducted vehicle disassembly and review of government tested vehicles.
- Mentor for new employees and summer interns including training for software, procedures and federal and GM requirements.

### CGIT (College Graduate In Training)                    Jun, 1996 - Apr, 1998

- Three Month Assignments in the Following Departments

Safety and Crashworthiness   Materials Engineering         Powertrain Development
Engineering Analysis         Vehicle Development           Corrosion Engineering
EEMS - Vehicle Build         Plant Support Team (Squeak and Rattle)

#### SKILLS/TRAINING

Child Passenger Safety Certified Child Seat Technician
Traffic Accident Reconstruction – Offered by Northwestern University
DFSS Black Belt Certification
Injuries, Anatomy, Biomechanics & Federal Regulation – Offered by SAE
Finite Element Analysis – LSDyna, Madymo
Component, Sled, and Full Vehicle Crash Testing

#### PROFESSIONAL MEMBERSHIPS

Society of Automotive Engineers